UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALLEN ALPER and DONNA HERNANDEZ, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SELECT PORTFOLIO SERVICING, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 19-cv-10436-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                          **July 19, 2019**

**I.      Introduction**

Plaintiffs Allen Alper ("Alper") and Donna Hernandez ("Hernandez") (collectively, "Plaintiffs") have filed this putative class action lawsuit against Defendant Select Portfolio Servicing, Inc. ("SPS") alleging violations of Mass. Gen. L. c. 93A, § 2 and 940 C.M.R. § 7.04. D. 9. Plaintiffs have moved to remand the matter to state court, D. 12, and SPS has moved for partial dismissal as to Plaintiff Alper, D. 14. For the reasons stated below, the Court DENIES Plaintiffs' motion for remand, D. 12, and DENIES SPS's partial motion to dismiss, D. 14.

**II.     Standard of Review**

    **A.      Motion to Dismiss**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

1

omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

  B. **<u>Motion for Remand</u>**

Upon the filing of a motion to remand, the Court must assess whether it "would have had original jurisdiction of the case had it been filed in [this] court." BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 832 (1st Cir. 1997) (quoting Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972)) (internal quotation mark omitted). When a plaintiff files an action in state court and the defendant responds by invoking federal jurisdiction through removal, the defendant has the burden of establishing that removal to the district court is proper. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). The defendant "must . . . make a 'colorable' showing that a basis for federal jurisdiction exists." Id. (quoting BIW Deceived, 132 F.3d at 832). "Generally, [d]oubts about the propriety of removing an action should be resolved in favor of remand." Miara v. First Allmerica Fin. Life Ins. Co., 379 F. Supp. 2d 20, 26 (D. Mass. 2005) (citation omitted).

### III. Factual Background

#### A. <u>Motion to Dismiss</u>

The following facts are drawn from Plaintiffs' amended complaint, D. 9, and are taken as true for the purposes of resolving the motion to dismiss.

Alper incurred debt in the form of a home mortgage loan at some point during or prior to 2017. D. 9 ¶ 8; see D. 9 ¶¶ 11, 13. In or around 2017, SPS began calling Alper's cellular telephone in an attempt to collect Alper's debt. D. 9 ¶ 11. Alper's debt was more than thirty days past due at that time. D. 9 ¶ 13. Throughout 2017 and the beginning of 2018, on average, SPS called Alper eight times over a seven-day period to try to collect his debt. D. 9 ¶ 14. Alper found the calls to be an invasion of his privacy and caused him to suffer anger, anxiety, emotional distress, fear, frustration and embarrassment. D. 9 ¶¶ 16-17. He wasted time and energy tending to SPS's calls. D. 9 ¶ 18.

Hernandez incurred debt in the form of a home mortgage loan, either during or prior to 2015. D. 9 ¶ 19; see D. 9 ¶¶ 22, 25. Throughout 2015, SPS called Hernandez's residential telephone in an attempt to collect her debt. D. 9 ¶ 22. At the time of the calls, Hernandez's debt was more than thirty days past due. D. 9 ¶ 25. SPS called Hernandez more than twice within a seven-day period. D. 9 ¶ 26. For example, in 2015, SPS called Hernandez more than twice during the last week of March 2015 and during each week of April 2015. D. 9 ¶ 27. The calls continued despite Hernandez's request to SPS that they cease calling her. D. 9 ¶ 28. Hernandez, like Alper, found the calls to be an invasion of her privacy and caused her to suffer anger, anxiety, emotional distress, fear, frustration and embarrassment. D. 9 ¶¶ 30-31. She wasted time and energy tending to SPS's calls. D. 9 ¶ 32.

### B. Motion to Remand

The following additional facts are relevant to the motion to remand.

Plaintiffs seek to certify the following class:

> All consumers residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action, received in excess of two telephone calls regarding a debt from SPS within a seven-day period to their residence, cellular telephone, or other provided telephone number.

D. 9 ¶ 34. Plaintiffs allege that there are thousands of Massachusetts consumers who are members of the proposed class. D. 9 ¶ 37. In the original state court complaint, Plaintiffs listed their damages as $750,000.00. D. 1-1 at 16 (civil action cover sheet).

Mark Syphus, a Document Control Officer for SPS, attests that approximately 9,253 Massachusetts loans that were serviced by SPS during the class period (January 18, 2015 – January 18, 2019) were at some point at least thirty days past due. D. 19 ¶ 8. He further attests that it is SPS's regular practice to make collection calls to borrowers who are at least thirty days past due on their mortgage payments, with the exception of approximately ten to fifteen percent of accounts that have a "do not call status." D. 19 ¶¶ 10-11. While SPS maintains records of all calls made to borrowers, it does not track whether the calls are "collections" calls or other types of call, such as a response to a customer question or a request for loan modification. D. 19 ¶¶ 12, 13. For SPS to determine if any borrowers in Massachusetts received more than two collections calls in a seven-day period during the class period, SPS would have to review each of the loan files and contact histories manually. D. 19 ¶ 15.

## IV. Procedural History

Plaintiffs instituted this action in Essex Superior Court on January 18, 2019, D. 1-1, and SPS then removed the matter to this Court, D. 1. Plaintiffs have now moved for remand to state court, D. 12, and SPS has moved for a partial dismissal of Plaintiffs' amended complaint, D. 14.

The Court heard the parties on the pending motions on June 3, 2019 and took the matters under advisement. D. 24.

V. **Discussion**

   A. **Motion for Remand**

SPS removed this case pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005). "CAFA was enacted with the stated purpose of expanding the number of class actions that could be heard in federal court." Pazol v. Tough Mudder, Inc., 819 F.3d 548, 552 (1st Cir. 2016). "Congress effectuated that purpose 'by imposing only a minimal diversity requirement, eliminating the statutory one-year time limit for removal, and providing for interlocutory appeal of a federal district court's remand order.'" Id. (quoting Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 47-48 (1st Cir. 2009)). CAFA provides, however, that federal courts only have jurisdiction over such civil actions where, in addition to other requirements not in dispute here, "the matter in controversy exceeds the sum or value of $ 5,000,000," 28 U.S.C. § 1332(d)(2), and where the number of class members is one hundred or more, id. § 1332(d)(5)(B). A defendant removing a case to federal court under CAFA "must show a 'reasonable probability'" that the aggregate claims of the plaintiffs' class exceed five million dollars. Pazol, 819 F.3d at 552 (quoting Amoche, 556 F.3d at 50); see Huston v. FLS Language Ctrs., 18 F. Supp. 3d 17, 21 (D. Mass. 2014) (applying "reasonable probability" removal standard from Amoche to motion to remand case removed under CAFA); Garick v. Mercedes-Benz USA, LLC, Civ. A. No. 17-cv-12042-IT, 2018 WL 1570163, at *1 (D. Mass. Mar. 30, 2018) (same). This "standard is 'for all practical purposes identical to' the preponderance of the evidence standard." Pazol, 819 F.3d at 552 (quoting Amoche, 556 F.3d at 50). Plaintiffs assert that the Court lacks subject matter

5

jurisdiction over this matter because SPS has not met its burden of establishing the size of the class and because the amount in controversy does not exceed five million dollars.

As an initial matter, the Court concludes that SPS has met its burden to demonstrate a class size of more than one hundred members. First, Plaintiffs contend in their amended complaint that there are "thousands" of class members. D. 9 ¶ 37. Second, SPS has submitted sworn testimony that approximately 9,253 consumers for whom SPS services loans were thirty days past due during the class period and that SPS has a regular practice of making collection calls to such consumers, except for about ten to fifteen percent who have a "do not call" status. D. 19 ¶¶ 9-11. Accordingly, based on the allegations of both parties, it is "reasonably probable" that at least one hundred of the approximately 7,865 – 8,327 consumers (eighty-five to ninety percent of 9,253) received calls in the same manner as Alper and Hernandez.

Next, the Court considers the amount in controversy. Plaintiffs assert their claims under Mass. Gen. L. c. 93A ("Chapter 93A") and 940 C.M.R. § 7.04. The regulation provides, in relevant part, that:

> [i]t shall constitute an unfair or deceptive act or practice for a creditor to contact a debtor in any of the following ways: . . . Initiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period . . . .

940 C.M.R. § 7.04(1)(f). Chapter 93A provides for damages stemming from "unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. L. c. 93A, § 2(a), as follows:

> [I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty–five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated section two [of Chapter 93A].

Id. § 9(3).

The Court first looks to Plaintiffs' damages allegations to determine the amount in controversy. See Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995). Plaintiffs alleged damages of $750,000 on the civil action cover to their original complaint, which they argue represents the total damages for the class. D. 13 at 6-7 (citing Huston, 18 F. Supp. 3d at 22). Plaintiffs argue that because this amount is less than five million dollars, the Court lacks subject matter jurisdiction. The Court's analysis does not end there, however, because it may also consider the Syphus affidavit. See Amoche, 556 F.3d at 51 (noting that "deciding whether a defendant has shown a reasonable probability that the amount of controversy exceeds $5 million may well require analysis of what both parties have shown" (emphasis in original)).[1] This is particularly so where, as here, "the plaintiffs [have] 'offered nothing' to challenge the accuracy of the defendant's affidavit." Id. (quoting Strawn v. AT&T Mobility LLC, 530 F.3d 293, 299 (4th Cir. 2008)).

As explained above, Syphus's declaration on behalf of SPS supports a class size of approximately 7,865 – 8,327. Because named plaintiffs purport to represent a class, their alleged damages provide an appropriate basis on which to calculate the damages of a typical class member. Sierra v. Progressive Direct Ins. Co., Civ. A. No. 12-30020-FDS, 2012 WL 4572923, at *2 (D. Mass. Sept. 28, 2012) (citing Manson v. GMAC Mortg., LLC, 602 F. Supp. 2d 289, 294 (D. Mass. 2009)); see D. 9 ¶ 40 (alleging, in Plaintiffs' complaint, that Alper and Hernandez's claims are

---

[1] Because the Court may also consider SPS's submissions, Huston, 18 F. Supp. 3d at 21-22; Powers v. Receivables Performance Management LLC, No. 4:18-cv-40170-TSH (D. Mass. Apr. 18, 2019) (attached as D. 22-1), are not dispositive. In those cases, the court appears to have considered only whether the amount listed on the plaintiffs' civil cover sheet represented claims for an individual or an entire class. See Huston, 18 F. Supp. 3d at 21-22; Powers, D. 22-1 at 5-6.

"typical" of the class members).² Accordingly, "[t]o ascertain the amount in controversy, a court may simply multiply (1) the putative class size by (2) a class member's typical damages." Sierra, 2012 WL 4572923, at *2 (citing Manson, 602 F. Supp. 2d at 294). Plaintiffs have not specified whether they seek a per-week award or a per-violation award, but either way the alleged damages have a reasonable probability of exceeding five million dollars. For example, based upon Alper, who alleges that SPS called him an average of eight times per week "throughout" 2017, a per-week calculation would yield $1,300 in damages ($25 times fifty-two weeks), while a per-violation award would yield $7,800 ($25 times fifty-two weeks times six excessive calls per week). Multiplying the lesser, weekly damages by the conservative estimate of 7,865 potential class members yields $10,224,500, while the per-violation damages times the same number of class members would yield $61,347,000—both of which exceed the five million dollars required under CAFA.³ Notably, the totals exceed five million dollars even without considering the double or treble damages available under Chapter 93A. The Court, therefore, DENIES Plaintiffs' motion to remand and proceeds to consideration of SPS's motion to dismiss.

B. **Motion to Dismiss Alper**

SPS argues that Plaintiffs' amended complaint should be dismissed with respect to Alper because it does not allege specific instances of misconduct by SPS against Alper. D. 15 at 7. In

---

² At the hearing, Plaintiffs relied upon Amoche for the proposition that the Court cannot extrapolate damages for the class based on the amount of damages alleged by Alper and Hernandez. As Defendant correctly countered, however, reasonable extrapolation is, in the essence, what the Court has to engage in to make this determination as to the basis of CAFA removal. Here, the Court must extrapolate because the allegations are class-based and Plaintiffs have alleged that their claims are typical of the class. Cf. Amoche, 556 F.3d at 52-53 (explaining that "simple multiplication" of a subset of the class members' damages, as calculated by the defendant, was unwarranted because the defendant's calculation was "not reliable" and "inflated").

³ SPS is alleged to have called Hernandez "throughout" 2015, resulting in similar calculations that exceed five million dollars.

support of its motion, SPS highlights the amended complaint's failure to specify the nature of the calls allegedly made to Alper or any specific seven-day period during which Alper allegedly received more than two debt collection calls. SPS contrasts the allegations about Alper with those about Hernandez, which provide specific dates on which she alleges SPS called her. Plaintiffs counter that the allegations about Alper are sufficient because Alper specifically alleged the time period during which the calls took place, the phone number to which the calls were placed, the frequency of the calls, the nature of the calls (debt collection), the fact that Alper's loan was thirty days past due and the nature of Alper's damages.

The Court concludes that Alper's allegations are sufficient to survive the motion to dismiss, although they are more sparse than those alleged by Hernandez. The Supreme Judicial Court has reversed summary judgment for a debt collector under 940 C.M.R. § 7.04(1)(f) where it was undisputed that 1) the defendant was a debtor and plaintiff was a debtor and 2) the defendant "telephoned [plaintiff] more than twice in a seven-day period, in an effort to collect a debt." Armata v. Target Corp., 480 Mass. 14, 18 (2018). Here, Plaintiffs have alleged those essential elements as to Alper. Furthermore, the allegations are specific enough to enable SPS to evaluate Alper's claims, given that SPS is in possession of the records documenting its calls to Alper, see D. 19 ¶ 13 (attesting, in Syphus' affidavit, that "SPS maintains records regarding the calls it makes to borrowers") and plausibly state a claim. The Court, therefore, denies SPS's motion to dismiss Alper's claims.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' motion for remand, D. 12, and DENIES SPS's partial motion to dismiss, D. 14.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge